BEGROW *v.* BEGROW.

DIVORCE—EXTREME CRUELTY—IMPROPER CONDUCT.
    For a wife to call her husband a "dirty dog," "street angel,"
    "house devil," and like names, to associate with other men,
    drink intoxicants in a public house, remain out all night
    without satisfactory reasons, and neglect her household
    duties, constitutes extreme cruelty.

Appeal from Wayne; Donovan, J. Submitted June
20, 1910. (Docket No. 96.) Decided July 14, 1910.

Bill by August A. Begrow against Anna R. Begrow for
a divorce. From a decree dismissing the bill, complainant appeals. Reversed, and a decree entered for complainant.

*Lehman, Riggs & Lehman,* for complainant.

*Robert M. Brownson* and *Denton Guinness,* for defendant.

OSTRANDER, J. The bill in this cause was filed for a
divorce from the bonds of matrimony, and it is alleged
therein that the parties were married February 21, 1898,
in the city of Detroit, where they have since resided, and
where they lived and cohabited together as husband and
wife until September 16, 1908. One child was born,
which died. The charge is that defendant has been
guilty of extreme cruelty, which began soon after the
marriage, and the particulars are that defendant began to
"nag" and annoy complainant by her exhibitions of
jealousy of women who had occasion to go to complainant's drug store to make purchases, and would make remarks which gave offense to customers who happened to
be in the store; that her jealousy had no foundation in fact,
had a tendency to drive away business, and did actually
cause complainant to lose customers; that during the

summer of 1907 complainant threatened to procure a divorce from defendant; and that thereupon the defendant, who has a most violent temper, "raised a chair and threatened to brain your orator, and he believes he would have suffered great bodily harm had he not succeeded in grasping said chair as the defendant was about to strike him over the head with it." He also charges that defendant has, in the company of men, frequented cafés and other places where intoxicating liquors are sold, has remained out until late hours at night, and on one occasion remained away from home all night without informing complainant of her intention to do so or offering any satisfactory explanation of her absence; that during the winter of 1907–08 she refused to prepare breakfast for complainant. Defendant answered, denying each and every of these charges of cruelty. There was a replication, a hearing in open court, and a decree dismissing the bill of complaint.

The testimony discloses that the parties to this suit were acquainted with each other for two years before they were married, during a portion of which time complainant boarded at defendant's home. A short time before the marriage, complainant, who is a druggist, failed in business and was adjudged a bankrupt. He began business again with very small capital, and for some time his wife was the reputed owner of his stock of goods. Defendant was a milliner and continued her business for some time after the marriage. They have always lived in rented apartments, and he has done and is doing business in a rented store. Doing a small business, and obliged to keep his store open evenings, complainant has not spent much time in the society of his wife and has not often visited with her places of public or of private entertainment. The defendant testified that he neglected her during practically all of their married life. There is testimony tending to prove occurrences which amounted to some interference with and loss to his business; but whether her conduct was the result of jealousy or was a

display of temper is not so clear. It is proved that she called him, upon occasion, such names as "a dirty dog," "a street angel," and "a house devil." The conduct which finally determined complainant to separate from her was her association with other men. It is not claimed that she was guilty of any crime; but it is proved that upon one occasion, shortly before the separation, at 9 o'clock in the evening, she was seen by her husband with her sister, another woman, and some men, who were strangers to the husband, coming from a café where liquors were served and where the party had gone, not to eat, but to drink. He, also, at about the same time, saw her riding in an automobile with men, or a man and other women. She admits that upon one occasion—he says it was four or five years after the marriage, she that it was before the marriage—she was at a roadhouse on Jefferson avenue with another woman and two men, "drummers," drinking, and that the men became so familiar in their behavior that she was obliged to escape from them. She admits that after the bill was filed in this cause she passed him on the street, and he stepped one side without speaking to her, when she said: "Oh, Gus! How can you be such a dirty dog?" There was an occasion when she remained away from home all night, without notifying her husband of her intention to do so, returning about 10 o'clock in the morning. There was then a quarrel. She offers an explanation, it is true; but her husband says it is not the one she offered at the time. She does not deny that during a portion, at least, of two winters, she refused to get breakfast for complainant, and offers no excuse for not doing so. There have been frequent quarrels.

However innocent defendant's behavior may have been, such conduct is not calculated to inspire the confidence of the husband or to insure domestic tranquility. The epithets she bestowed upon him are not approved expressions of respect or of affection. Such expressions made to him and such conduct away from him are calculated to

induce the feeling that she cared nothing for him and but little for her reputation, to excite his distrust and anxiety. Self-respecting men do not submit to such treatment unless they are by circumstances obliged to do so. The law does not compel them. There are no children to be considered here. No question of permanent alimony is involved. We are of opinion that complainant is entitled to a divorce upon the ground of extreme cruelty. The decree below is reversed, and one will be entered in this court dissolving the marriage.

Defendant's motion in this court for an allowance for expenses of the appeal has been considered. Costs of defendant were taxed below at $93.90, including a solicitor's fee of $30. After the bill was dismissed, defendant obtained an order, at the circuit, that complainant pay to her $3 a week during the pendency of the appeal and a solicitor's fee of $25. It is our understanding that this order for solicitor's fee was made in view of the requirement that defendant must be to the expense of preparing a brief on appeal. These sums have been paid, the allowance from and after November 29, 1909. Defendant lives in an eight-room house, the rent of which is $18 a month, and has installed a telephone, a convenience the parties did not have when they lived together. She has possession of all the household furniture. Complainant pays for his room rent $1.50 a week. He does business in a one-story wooden structure situated some three miles from the business center of Detroit, and he is paid $300 per annum as postmaster. The figures are not before us; but it is said that in the court below the complainant exhibited a statement of his resources, after which the order for temporary alimony was entered.

An order may be entered that appellant pay to appellee the sum of $50 in addition to the allowance made by the circuit court.

BIRD, C. J., and HOOKER, BLAIR, and STONE, JJ., concurred.