COTTON *v.* COTTON.

1. APPEAL AND ERROR—DUTY OF SUPREME COURT TO DETERMINE ISSUES FROM RECORD.

Although, in a divorce suit, the trial court, who heard and saw the witnesses, was in better position to weigh their testimony than is the Supreme Court, yet, on appeal, under the law and practice, the duty is cast upon it to determine the issue from the record, and it should not shirk said duty and affirm the decree of the court below where it is convinced from the record that it should be reversed.

2. DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.

    In husband's suit for divorce, evidence that the wife repeatedly interfered with his professional business as a dentist, causing several patients to refrain from further patronizing him, and that in other respects her conduct was unbearable, *held*, sufficient to justify a decree of divorce on the ground of extreme cruelty, although he was not altogether blameless in his conduct toward her.

    WIEST, J., dissenting.

Appeal from Delta; Flannigan (Richard C.), J. Submitted April 6, 1928. (Docket No. 59, Calendar No. 33,487.) Decided July 24, 1928.

Bill by Gilbert A. Cotton against Abbie Gertrude Merrill Cotton for a divorce. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Ryall & Frost,* for plaintiff.

*Doyle, Doyle & Doyle,* for defendant.

SHARPE, J. These parties were married in 1922. They became acquainted with each other about three months prior thereto. He was at that time 48 years of age and she was 40. He is a practicing dentist in the city of Escanaba, and at the time of their marriage was doing a lucrative business. They have no children. He has a son, the issue of a former marriage, who was 13 years of age at the time of their marriage. They separated about the first of April, 1926. On May 11th following, he filed the bill of complaint herein praying for a divorce on the grounds of extreme and repeated cruelty. In her answer she denies the charges of cruelty, seeks to explain the occurrences relied on to establish the charges, and prays for a dismissal of the bill. The trial court found that she "was a sick woman, physically and mentally," and that

her conduct, "however annoying, or exasperating," was not a sufficient ground for divorce, and entered a decree dismissing the bill, from which plaintiff has taken an appeal.

Were we satisfied that defendant's conduct was induced by the condition of her health, we would be inclined to affirm the decree. We concede that the trial court, who heard and saw the witnesses, was in a better position to weigh their testimony than we are, but, under our law and practice, the duty is cast upon us to determine the issue from the record before us, and we have no right to shirk it. The record contains much that excites our sympathy for the defendant, and causes a feeling of regret that this couple could not have lived happily together. But the fact remains that her conduct had become so unbearable that we cannot but conclude that the plaintiff was justified in leaving her and filing his bill of complaint herein.

At the time of their marriage the plaintiff had a comfortable home in Escanaba, worth about $7,000, in which they lived until he left it in April, 1926. Among the grounds of complaint testified to by him was her unwarranted interference with the conduct of his professional duties. Against his protest, she spent considerable of her time in his office, using the telephone there installed, which was in close contact with his work, and, when not there, would frequently call him up four or five times a day without cause therefor. Several of his patients refrained from further patronizing him, and ascribed her interference as the cause. She interfered with the work of his assistants, attempted to discharge them, and one of them left on that account. She would visit the office when the plaintiff was out of the city; insist on meeting the patients as they came in and taking charge of the work of the office. She would call up his assistant soon

after he left for his office in the morning, and seek to ascertain if he had arrived there, and what patients he had coming in that day, and requested that she be kept informed of any talk which the assistant overheard between the plaintiff and his patients. She sought to secure such information by making a present to one of the assistants. She accused the assistant of being on familiar terms with the plaintiff.

Many incidents of altercations between her and plaintiff's son are detailed. She several times attacked him, once with an iron poker, at another time with a carving knife, and at still another with a stick of wood. On one occasion, when the plaintiff interfered, she struck him with the knife she had in her hand, and in the scuffle that ensued they both sustained injury. At another time she struck plaintiff with an axe. She also interfered with the boy in his school work.

While the defendant in her testimony denies the truth of many of these charges, and attempts to explain others, her admissions and the corroborating proof offered by plaintiff lead us to conclude that they are fairly established by a preponderance of the evidence. She thus explains the incident of the use of the carving knife. While preparing the table for dinner, the son suggested that they should go to the hotel for the meal:

"So I said, 'Son, will you please cut it out?' and I struck his hand with the handle of the knife. He says, 'That is a nice way to be nice to anybody,' and his father got up from the living room where he was reading, and came out in the dining room, and he says, 'That is enough of that!' He says, 'Give me the carving set.' I says, 'I don't think it is necessary for me to give it to you. I am capable and competent to place the carving set at your place.' And I started to place it; and he says, 'Give it to me.' And I determined that he should not take it from me. And in so taking it from me, in some way, I don't know, he

was cut on the cheek a little bit, and I had a cut on my small finger; it didn't bleed, just a little place."

She also testified:

"I think on one occasion I was at the office when he was acting a little differently than he should, and I think his glasses in some way or other, I don't recall, I pulled them off his face, or scratched his face. I recall that he asked me to leave the office and started to push me out of the office. I said, 'I don't think that is necessary; I walked in nicely, and I can walk out nicely.' And I sat down on the davenport."

Esther S. Peterson, one of the plaintiff's assistants, after testifying to defendant's conduct in the office in corroboration of plaintiff's statements, said:

"I finally left doctor's employ May 24, 1924, the doctor thinking it would be better because of all she said. She said if I stayed she was going to kill me. She stated that to me. She also said that she was going to get rid of both doctor and I. His practice began to decrease very fast and many of his patients came personally to me and said they wouldn't come up as long as Mrs. Cotton was in the family. The doctor failed very rapidly and became much thinner and paler. He didn't seem to be able to eat or sleep from what he said."

It will serve no useful purpose to review at greater length the charges and countercharges made by the parties. The plaintiff does not seek to hold himself blameless for the unfortunate occurrences which began soon after their marriage and continued until their separation. He admits that he took the part of the boy on several occasions, and at times forcibly insisted on her complying with his requests that she should not interfere in his office business. But, after carefully considering all the testimony, we feel impelled to find that he exercised much forbearance towards her, and that his acts of interference with her in her conduct in the office and in the home were quite fully justified.

The record discloses that at one time she became afflicted with blindness, and it is now said that she has entirely lost the sight of one eye. Some of the doctors who were called testified that she was at times suffering from hysteria. If a sufficient cause for divorce has been established by the proofs, it will serve no useful purpose to refuse plaintiff a decree for this reason. It is apparent that these parties will never again resume marital relations. It can but be hoped that, when they are judicially separated and the worry incident to their many disputes and altercations, resulting in plaintiff's leaving his home, have passed away, her health will improve and that she will be much happier than she was before their separation.

A few days after their separation, plaintiff wrote to defendant's brother and sister, informing them of that fact. He received replies from both. These letters were put in evidence by consent. While not proof of the facts stated therein, they do seem to satisfy us that we are doing no injustice to defendant in the conclusion we have reached. The brother wrote:

"While I cannot help but be sorry that things should be as they are with you, I am not in the least surprised. In fact, I have looked for this for some time.

"After our visit north last year we have often remarked what a remarkable man you were to allow things to go on as they were while we were there.

"You may have thought it strange that we did not arrange to stay at your house while there, but I knew from former experience just how things would be if we did."

The sister said:

"I received your letter, and of course felt very badly at the steps you were forced to take. You have been wonderfully patient with her and I know she has no one to blame but herself.

"I had a letter from her a few days ago and she asked me if I was coming up there this summer. I

can't think of it as you no doubt remember my trip up there last year."

The decree entered will be set aside, and one may be entered here for the plaintiff.    It appears from the record that defendant has no immediate means of support.    She apparently has an interest in some estate property worth about $8,000, which has not . been settled.    Should she receive this, she will have more property than plaintiff, and would not be entitled to any allowance.    The plaintiff has by order of this court been paying her $20 per week for temporary alimony.    The decree may so provide, and may contain a provision that application may at any time be made to the trial court, the record being remanded for that purpose, for modification thereof.    Its payment, unless otherwise secured to the satisfaction of the trial court, will constitute a lien upon the home property, which is hereby awarded to plaintiff.    No costs will be allowed.

FEAD, C. J., and NORTH, FELLOWS, CLARK, McDONALD, and POTTER, JJ., concurred with SHARPE, J.

WIEST, J. (*dissenting*).    Judge Flannigan heard this case in the circuit, saw the witnesses, noted their demeanor, weighed the testimony, and was of the opinion that grounds for a divorce were not established. I have read the record and have the same opinion.    I think both parties are to blame for their unfortunate situation.    The parties were married at a period in their lives when the habits of each had become fixed. Plaintiff was dictatorial and defendant was of a nervous temperament.    Some coward wrote plaintiff an unsigned letter, alleging improper conduct between his wife and young son, and he showed the letter to his wife.    He then knew, and now says, there was no foundation for such attack from ambush.    The exhibition of the letter was unkind because there was

at the time no expression of confidence in the wife nor of an intent to find the skulker.

At the time of the hearing the son of plaintiff by a former marriage was a young man, and he was not called as a witness although he must have been well aware of facts bearing upon the issue. Ordinarily the omission to call a child would be looked on favorably, but in this case it was charged that the stepmother had been cruel to the child. If the stepmother was cruel to the boy he would hardly have written her the many dutiful letters appearing in the record.

Defendant on many occasions failed to exercise good sense and the same may be said of plaintiff. Plaintiff claims defendant's visits to his office and interference with his help hurt his business. She undoubtedly visited his office too often and undertook to direct and manage his office help, but the help seemed to pay little attention to her orders. Some days before he left the home and went to a hotel he informed his wife of his intention and carried his purpose out to the minute.

Of course, the letters mentioned in my Brother's opinion were not competent evidence, and, I think, should not be given any consideration.

The decree should be affirmed, with costs against plaintiff.