## GORDON v. GORDON.

1. DIVORCE — EVIDENCE — SEPARATE MAINTENANCE — EQUALITY OF GUILT.

   Evidence sustained defendant's cross bill for absolute divorce and was not sufficient to sustain a decree of separate maintenance for the wife nor her claim of equality of guilt.

2. SAME—DIVISION OF PROPERTY—EQUITY.

   Decree of divorce whereby property was substantially equally divided between husband and wife at termination of marriage lasting 23 years *held,* fair and equitable, where it gave all the real property, household furniture, furnishings and fixtures, some stock and proceeds of life insurance policies to wife and awarded cash on deposit, the automobile and other insurance policies to husband, a professional bondsman, since it was necessary for the continuance of his business to retain the cash.

3. SAME—ALIMONY.

   Decree, awarding husband divorce on his cross bill, which did not include a provision for alimony to wife is modified so as to permit her to apply for a redetermination of the question of alimony.

4. SAME—MODIFICATION OF DECREE—ALIMONY—COSTS.

   No costs are allowed on wife's appeal from decree awarding divorce to husband on his cross bill, where decree is modified to remand the case for future determination of alimony.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Divorce and Separation, §§ 383, 416.
[2] 17 Am Jur, Divorce and Separation, § 445.
[3] 17 Am Jur, Divorce and Separation, § 647.
[3] Power to reopen decree of divorce which is silent as to or expressly provides against alimony so as to permit modification in that regard. 83 ALR 1248.
[4] 17 Am Jur, Divorce and Separation, § 581.

(67)

Appeal from Wayne; Toms (Robert M.), J. Submitted January 10, 1951. (Docket No. 5, Calendar No. 44,924.) Decided April 3, 1951.

Bill by Sarah M. Gordon against Louis Gordon for separate maintenance on ground of extreme and repeated cruelty. Cross bill by defendant against plaintiff for absolute divorce on same grounds. Decree for defendant. Plaintiff appeals. Modified and affirmed.

*Charles Rubiner* and *Nathan L. Milstein,* for plaintiff.

*Edward N. Barnard,* for defendant.

BUSHNELL, J. The parties were married on August 5, 1928, and lived together as husband and wife until April 30, 1947. A daughter was born in 1929 and a son in 1930.

On September 16, 1947, plaintiff Sarah M. Gordon filed a bill for separate maintenance; defendant answered and filed a cross bill for divorce. Pending trial, plaintiff received $80 per week as temporary alimony.

The property owned by the parties was determined by the friend of the court to be as follows: Real estate consisting of a 2-family flat valued at $15,000, and 8 vacant lots valued at $500; personalty consisting of cash in bank accounts, $5,800; cash on deposit with Peerless Surety Company, $16,000; cash on deposit in recorder's court as security for criminal bonds, $2,000; war bonds, $2,200; an automobile valued at $1,500, and a diamond ring at $500. Defendant's life insurance policies in which his wife is a beneficiary had a cash value of $7,740, and 3 policies on plaintiff and the 2 children, in which defendant was beneficiary, had a total cash value of $2,703.

Plaintiff owned 4 shares of A & P stock valued at $200.

Defendant is a professional bondsman, and the cash on deposit with the surety company and the court is required in the operation of his business. His net income for the years 1941 to 1948, inclusive, totaled $127,901.75, or a yearly average of about $16,000. His income tax payments for the same period totaled $29,826.78, an average of $3,728.

The trial judge made the following comments on the evidence:

"The personality of the wife, as disclosed by her appearance and testimony, is that of a spoiled child. She weeps and sighs and flies into tantrums and uses all the other weapons which a child uses to gain an advantage. * * * These might be called personality traits which are part of the lottery of marriage, but in this case the plaintiff implemented her temperamental vagaries by conduct which is utterly indefensible. * * * On one occasion she went into the defendant's office during business hours, engaged in a violent quarrel, broke the glass top on his desk and shattered a picture and clock on the wall. She carried her personal complaint about her husband to one of the judges of recorder's court, who was doubtless an unwilling confidant, and to the assistant manager of the Book Cadillac Hotel, with whom she had not the slightest acquaintance. * * * She resented his interest and activity in the Metropolitan Club, of which he was president and which was located a short distance from their home. * * * On one occasion at the club when the defendant was presenting some prizes, being in a somewhat expansive mood and somewhat impressed with importance of his assignment, he stated from the platform, 'I will now present the charming Mrs. X with this purse for being the youngest mother.' The plaintiff in her testimony, after describing the incident, then added, 'He just had to smile from ear to ear.' This is one of the instances upon which she relies in claim-

ing separate maintenance. On another occasion a bill for a subscription to the Benevolent Fund of the Metropolitan Club came to the house addressed to the defendant. The plaintiff opened it, wrote across it a tirade against the defendant and sent it back to the club. On another occasion in one of her hysterical moods the plaintiff seized defendant's trousers and ripped them partly off. After the separation, while protesting that she was very anxious to have the defendant come home and rejoin his family, she had the locks on the residence changed so that he couldn't possibly have done what she was begging him to do. * * * The plaintiff wrote to Mr. Miles, the head of the bonding company for which the defendant was agent, seeking an appointment with him for the purpose of airing her complaints. She went to the barber shop which the defendant patronized, and after relating her troubles, requested the barber to ask the defendant to return home.

"These are some of the significant acts of the plaintiff, which indicated her childish and hysterical attitude toward her husband. They are more than the manifestations of a unique personality; they are the very refinement of extreme and repeated cruelty calculated to fray the nerves and debase the dignity of any man with normal sensibilities. The plaintiff claims that the defendant sought surcease in the company of a woman friend who lived in the neighborhood. This was not denied by the defendant. This association was probably ill-advised, but the court can readily understand that the unbearable attitude and conduct of the plaintiff drove the defendant into it and was responsible for it. No undue intimacy or immorality was charged or proved, and the defendant made no effort to hide it. When the defendant was in this neighbor's home, her daughter and other persons were usually present and the shades were left up so that the plaintiff could (and did) spy upon him. The law may require that a man submit to intolerable torment without seeking asylum else-

where, but the law is also realistic and reckons with the natural impulses of human beings in distress."

The trial judge concluded that plaintiff was not entitled to a decree for separate maintenance, but that defendant had proven such acts of extreme and repeated cruelty as to entitle him to a decree of absolute divorce. The court decreed an approximately equal division of the property. The wife received the real property, all household furniture, furnishings and fixtures, 4 shares of A & P stock; and further provided that 2 life insurance policies "shall be by defendant * * * cashed at their present cash surrender value, and the proceeds thereof given to the plaintiff." The husband was awarded all of the moneys in banks and on deposit with the surety company and the recorder's court, the automobile, and the insurance policies in which he is the beneficiary. He was required to pay $250 to his wife's attorney, and $1 in lieu of dower. No alimony was awarded to the wife.

Mrs. Gordon has appealed and argues that her proofs were sufficient to establish her right to a decree for separate maintenance; that her husband's proofs were insufficient to support a decree for divorce, and that this Court should vacate the decree because defendant was "equally as guilty of extreme cruelty as the plaintiff." She also argues that the property division is inequitable and does not provide her with proper support.

After a consideration of the testimony *de novo,* we concur with the trial judge that the proofs are not sufficient to sustain a decree of separate maintenance, but do sustain defendant's cross bill for a decree of absolute divorce. The record does not support plaintiff's argument of equality of guilt.

The property settlement was fair and equitable. It is necessary for the continuance of defendant's

business to permit him to retain cash in banks and on deposit as security.

However, plaintiff, who was married to defendant 23 years ago, is now 48 years old and has borne him 2 children.

In *Jaquish* v. *Jaquish,* 314 Mich 386, where the trial judge did not grant the wife any alimony for her support, we said:

"The decree should not be construed so as to foreclose her from obtaining it. The decree is modified so as to include a provision that the plaintiff is not precluded from applying for and obtaining alimony for her support from defendant should the trial court deem it proper and order it."

In *McCoy* v. *McCoy,* 317 Mich 478, we approved a decree of divorce in which the right was reserved by the trial court to pass in the future on the question of alimony for the support of the plaintiff. See, also, *Adams* v. *Seibly,* 115 Mich 402, and other authorities cited in the *McCoy Case* at page 481.

Under the facts disclosed in this record, plaintiff should not be precluded from applying, under proper circumstances, for a redetermination of the question of alimony.

The decree of the trial court will be modified as herein indicated and a decree will be entered in this Court accordingly, with provision for a remand as to future alimony. No costs are allowed.

Reid, C. J., and Boyles, North, Dethmers, Butzel, Carr, and Sharpe, JJ., concurred.