KINEK *v.* KINEK.

1. DIVORCE—CONDONATION—EFFECT AS TO PRIOR MISCONDUCT.
   After condonation has taken place with an offending husband, the wife could not use the husband's prior misconduct as a recrimination in his subsequent suit for divorce.

2. SAME—RECONCILIATION—EVIDENCE.
   Wife's charge that the husband was guilty of misconduct after a reconciliation had taken place *held,* without evidentiary support in his suit for divorce.

3. SAME—EXTREME CRUELTY—FALSE ACCUSATIONS OF MISCONDUCT—INTERFERENCE WITH HUSBAND'S BUSINESS.
   False accusations of misconduct, repeated interference with husband's business and her accusation that he murdered his

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Divorce and Separation § 240.
[3] 17 Am Jur, Divorce and Separation §§ 63–65.
[3] Accusation of improper relations as cruelty constituting ground for divorce or separation. 143 ALR 623.
[6] 17 Am Jur, Divorce and Separation § 204.
[7] 17 Am Jur, Divorce and Separation § 445.

mother constitute extreme cruelty on the part of the wife sufficient to base a decree for the husband.

4. SAME—CONDONATION—CONFLICTING EVIDENCE—SUPREME COURT.
The Supreme Court must rely largely upon the finding of the trial judge who saw and heard the witnesses, where there was conflicting testimony as to whether the husband's offer of reconciliation was made in good faith.

5. SAME—CONDONATION—FRAUD—EVIDENCE.
Trial court's finding that reconciliation was made in good faith, that the parties resumed cohabitation and that the husband made an honest attempt toward reestablishing the marriage is affirmed, where the implication of fraud is not supported by strong evidence.

6. SAME—CONDONATION—FRAUD—PRESUMPTIONS—EVIDENCE.
The rule that fraud inducing condonation prevents the latter from taking effect is applied in consideration of the well-settled maxim that fraud is never presumed but must be proven by a preponderance of the testimony.

7. SAME—PROPERTY SETTLEMENT—MODIFICATION OF DECREE.
Testimony that husband took the greater share of wife's savings of $2,500 when he returned from service required modification of equal division to an award to her of $1,500, the amount the husband offered to pay her for a property settlement.

8. SAME—COSTS.
No costs are allowed on wife's appeal in suit for divorce, where there is a modification in her favor of the property settlement but the decree for the husband is otherwise affirmed.

Appeal from Montcalm; Davis (Morris K.), J. Submitted June 5, 1951. (Docket No. 13, Calendar No. 44,888.) Decided September 5, 1951.

Bill by Michael K. Kinek against Marian Kinek for divorce on ground of extreme and repeated cruelty. Decree for plaintiff. Defendant appeals. Modified and affirmed.

*Frederic F. Brace* and *Ballard, Jennings, Bishop & Fraser* (*Joe C. Foster,* of counsel), for plaintiff.

*Buckingham, Piggins & Rehn (Thomas L. Thomson,* of counsel), for defendant. ·

BUTZEL, J. This is an appeal from a decree granting a divorce to the plaintiff husband on grounds of extreme cruelty. The parties are in accord as to the legal principles involved, the sole question being whether the trial court made a correct decision on the facts presented.

Michael and Marian Kinek were married in Whiting, Indiana, in 1941. They have 1 child, a girl born in 1942. They lived together until 1943 when Michael was inducted into the army. During his 3 years of service, his wife lived with her parents in Whiting. She supplemented her regular allotment checks by working in a factory. Michael met an English girl while in the army and desired to marry her. He instituted divorce proceedings in the Wayne county circuit court upon being discharged from the service in 1946. The suit was contested and the bill was dismissed. Since 1947 plaintiff has resided in Greenville, Michigan, where he became half owner of a bar. His wife remained at home in Indiana. While living in Greenville, the plaintiff became infatuated with a young lady living in Lansing, and the evidence seems to indicate that they were very intimate. The wife and the child joined the plaintiff in Greenville in the early part of June, 1948. Although the husband was not pleased at her arrival, his better judgment prevailed and the wife and child moved into the home of the husband's partner. The husband and his partner occupied the upstairs bedroom, the wife and child using the one downstairs.

Very shortly after the wife's arrival, the Kineks met with plaintiff's attorney at his office and he advised them to reconcile their differences and resume their marital relationship. This was done, although

there is a direct conflict in testimony as to the intimacy of the relationship. However, the wife performed the usual household tasks and the husband claims that he stopped his Lansing affair at least for the time being. During the next 3 months the husband was not shown guilty of any conduct which would support a divorce or constitute a defense to one, although he was not as warm and friendly as a husband should have been. There was some testimony that the husband did not give sufficient money to his wife, but the family was provided with food and shelter, and as the husband's financial position was not strong, it cannot be said that he was derelict in his duty.

During the reconciliation period the husband's mother died. When he returned from the funeral, he was publicly accused by the wife of murdering his mother. She testified that she said this because she felt that his lack of attention towards his mother had brought about her earlier demise. The wife made scenes at the husband's place of business. On one occasion she accused him in vile terms and in a loud voice of being intimate with every woman in Greenville. This was done in the presence of customers, employees of the establishment, and the little daughter. On another occasion she accused the husband's partner of running a bawdy house, a completely unfounded accusation. There were also constant quarrels over money.

On August 30, 1948, the husband filed a petition for divorce, alleging extreme cruelty. He was granted the decree and this appeal followed.

The trial court found that there was a reconciliation in June, 1947, and that the parties had condoned all previous marital offenses. This being true, the wife could not use the husband's prior misconduct as a recrimination in the action. The court further found that the husband had acted properly after the

reconciliation, but that the wife's conduct constituted extreme and repeated cruelty. The appeal is taken on 3 grounds: First, that the wife was not guilty of cruelty; Second, that the husband was guilty of misconduct after the reconciliation had taken place; and, Third, that there was never a complete reconciliation and condonation between the parties.

There was no evidence to support the wife's charge that the husband was guilty of misconduct after the reconciliation, nor is there any doubt that under our decisions the wife's conduct offered sufficient statutory grounds for divorce. False accusations of misconduct have often been held to constitute extreme cruelty. *Ziontz* v. *Ziontz,* 324 Mich 155; *Mark* v. *Mark,* 319 Mich 258. Repeated interference with the husband's business is extreme cruelty. *Cotton* v. *Cotton,* 243 Mich 436; *Gordon* v. *Gordon,* 330 Mich 67. The wife accused the husband of murdering his mother. Calling improper names can at times constitute extreme cruelty. *Begrow* v. *Begrow,* 162 Mich 349 (139 Am St Rep 562).

The critical issue in this case is whether the husband's offer of reconciliation was made in good faith, or whether it was a ruse designed by him to show condonation in a later effort by him to obtain a divorce. With the conflicting testimony we must largely rely upon the finding of the trial judge who saw and heard the witnesses and was better able than we are to arrive at the truth. *Creech* v. *Creech,* 126 Mich 267; *Jaquish* v. *Jaquish,* 314 Mich 386. The court found that the reconciliation was made in good faith, that the parties resumed cohabitation, and that the husband made an honest attempt toward reestablishing the marriage. While there are implications of fraud in the record, that is a charge that requires strong evidence for support. In *Farley* v. *Farley,* 278 Mich 361 (109 ALR 678), we said at page 367:

"The rule is recognized in 9 RCL, p 380, § 173, 19 CJ, p 84, § 193, and 14 ALR 939, that fraud inducing condonation prevents the latter from taking effect; however, this rule must be applied in consideration of the well-settled maxim:

" 'Fraud is never presumed; it must be proven by a preponderance of the testimony.' *Steele* v. *Shaffer,* 241 Mich 632."

There is not sufficient evidence in the record to establish that the husband's attempt at reconciliation was not made in good faith, and under these circumstances, we must accept the trial court's findings.

The decree provided that the wife was to have custody of the child, and that the husband was to pay $15 each week towards its support until the child reached the age of 17 years. The husband was ordered to pay $1,250 to the wife as a property settlement. The wife testified that she had saved $2,500 and when the husband returned from the service, he took the greater share. The testimony indicates that the husband offered to pay $1,500, and the wife should be given that much.

The decree will be modified to increase the property settlement to $1,500, and, as modified, is affirmed. No costs.

REID, C. J., and BOYLES, NORTH, DETHMERS, CARR, BUSHNELL, and SHARPE, JJ., concurred.