*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

CITY OF WAYNE,

           Plaintiff/Counterdefendant-Appellee,

v

ANTHONY MILLER,

           Defendant/Counterplaintiff-Appellant.

FOR PUBLICATION
June 6, 2024
9:00 a.m.

No. 364138
Wayne Circuit Court
LC No. 22-001565-CZ

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

BOONSTRA, J.

Defendant/counterplaintiff Anthony Miller (Miller) formerly served as an elected member of the city council of plaintiff/counterdefendant City of Wayne (plaintiff or the City). After resigning his elected position, Miller was sued by the City and he responded by filing claims against the City under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.* Miller now appeals by leave granted[1] the trial court's order granting summary disposition to the City on his claims. Miller also challenges the trial court's denial of his motion for reconsideration, in which he requested leave to amend his pleadings. We reverse and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Miller is a former member of plaintiff's City Council. The parties agree that this position is that of an elected public official, that Miller served at least two terms and was paid a salary, and that he resigned from the position in June 2021.

The parties also agree that, in 2018, the City hired an attorney to conduct an assessment of the City's work environment. The City refers in the singular to "the underlying claim of a hostile work environment" and "an employee claim of a hostile work environment," while Miller describes the subject of the investigation as "numerous complaints of workplace discrimination

---

[1] *City of Wayne v Miller*, unpublished order of the Court of Appeals, entered May 5, 2023 (Docket No. 364138).

and harassment." According to Miller, he was interviewed in 2018 by the attorney hired by the City "to investigate and make findings related to numerous complaints of workplace discrimination and harassment." Miller alleges that he "revealed instances of discrimination and hostility toward himself and other employees based on sexual orientation/non-conforming gender." *Id.*[2] The parties agree that the investigating attorney prepared a report (the Report) containing his findings, opinions and recommendations.

In 2022, the City filed suit against Miller, alleging that Miller had violated his fiduciary duties to the City by providing unredacted copies of the Report, a confidential document, to the Michigan State Police and possibly other government agencies, and by referring to the Report in an affidavit he provided in separate federal litigation. The City sought declaratory and injunctive relief.

Miller filed a counterclaim against the City asserting claims under the ELCRA. Specifically, Miller alleged that the City had discriminated against him on the basis of his sexual orientation and gender, had created a hostile work environment on the basis of his sexual orientation, and had retaliated against him for reporting instances of discrimination based on his sexual orientation and gender. Miller further alleged that after he was interviewed by the investigating attorney, he was retaliated against by the City in the following ways:

A. September 13, 2019, City Council refused [Miller's] requests to amend [the City's] employee handbook section on harassment and discrimination in order to include protections against discrimination based on sexual orientation;

B. Mayor Rhaesa suddenly stopped asking [Miller] to join committees from approximately January 1, 2020 through [Miller's] resignation on or around June 1, 2021;

C. Interference with [Miller's] ability to raise issues on the Council agenda, orchestrated by Mayor Rhaesa; and

D. Continuous ongoing demeanor of hostility and exclusion towards [Miller] by the Mayor, City Manager, and Council.

The City moved for summary disposition of Miller's counterclaim under MCR 2.116(C)(8), arguing that (1) Miller, as an elected public official, was not an "employee" and there was no "employment relationship" between the parties, and (2) Miller had failed to even allege an adverse employment action taken against him. Miller responded, arguing that he had sufficiently pleaded claims under the ELCRA, that the existence of an employment relationship was a question of fact requiring discovery, and that in any event the factors to be considered in determining whether such an employment relationship exists for purposes of an "employment discrimination" claim under MCL 37.2202 supported a finding that the City was Miller's former

---

[2] Miller refers to himself using masculine pronouns and has not requested that this Court do otherwise.

employer. Miller also requested that he be permitted to amend his pleadings if the trial court found the City's arguments to have merit.

At a hearing on the City's motion, the trial court held that Miller's counterclaim did not meet the requirements for claims under the ELCRA because Miller had been an elected official rather than an employee. The trial court subsequently entered an order granting the City's motion for summary disposition of Miller's counterclaim. The trial court subsequently denied Miller's motion for reconsideration. This appeal followed.

## II. STANDARD OF REVIEW

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999) (quotation marks and citations omitted)].

We review de novo issues of statutory interpretation. *Elezovic v Ford Motor Co*, 472 Mich 408, 418; 697 NW2d 851 (2005). We review for an abuse of discretion a trial court's denial of a motion to amend a complaint. *Diem v Sallie Mae Home Loans, Inc*, 307 Mich App 204, 215-216; 859 NW2d 238 (2014).

## III. EMPLOYMENT DISCRIMINATION CLAIM

Miller argues that the trial court erred by granting the City's motion for summary disposition on his employment discrimination claim based on its conclusion that Miller was not an employee of the City. We agree.

The [EL]CRA is composed of eight articles that serve distinct purposes. Article 1 consists of definitions that apply to the entire act. The discriminatory actions prohibited by the [EL]CRA are set forth in articles 2 through 5, which individually contain definitions and rules only applicable to the type of discrimination addressed in that particular article: article 2 prohibits employment discrimination, article 3 prohibits discrimination in places of public accommodation, article 4 prohibits discrimination in educational institutions, and article 5 prohibits housing discrimination. There are three remaining articles: article 6 establishes the civil rights commission and its procedures, article 7 prohibits retaliation against a person who has taken action in opposition to a violation of the [EL]CRA, and article 8 provides additional rules for claims brought under the [EL]CRA. [*Rymal v Baergen*, 262 Mich App 274, 328-329; 686 NW2d 241 (2004) (K.F. KELLY, J., concurring in part and dissenting in part).]

Concerning employment discrimination claims of the kind raised by Miller, MCL 37.2202(1) provides in relevant part:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(c) Segregate, classify, or otherwise discriminate against a person on the basis of sex with respect to a term, condition, or privilege of employment, including, but not limited to, a benefit plan or system.

MCL 37.2202 thus prohibits certain conduct by an "employer" against "an individual," against "an employee or applicant for employment," or against a "person," depending on the specifically applicable statutory subsection. The ELCRA's general definition provision, MCL 37.2103, defines a "person" as follows:

"Person" means an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, this state or a political subdivision of this state or an agency of this state, or any other legal or commercial entity. [MCL 37.2103(h).]

The definitional provision of Article 2, MCL 37.2201, defines an "employer" as "a person who has 1 or more employees, and includes an agent of that person." MCL 37.2201(a).

The City admitted in its pleadings that it is "a municipal corporation" and that Miller is an "individual." As a municipal corporation, the City is therefore a "person" under the ELCRA, and is an "employer" if it has one or more employees. The City's complaint stated that an investigating attorney was hired, among other things, to "conduct interviews of City employees and officials," and that the attorney in fact interviewed 17 "employees." Therefore, although the City disputes whether it was *Miller*'s employer, its own pleadings establish that it is *an* employer. Miller is both a "person" and an "individual," because one definition encompasses the other.

With those definitions in mind, MCL 37.2202(1) is properly construed as prohibiting an employer such as the City from "discriminat[ing] [for specified reasons] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment." We further note that our Supreme Court has held that "an employer is liable under [Article 2 of the ELCRA] when it utilizes a prohibited characteristic in order to adversely affect or control an individual's employment or potential employment." *McClements v Ford Motor Co*, 473 Mich 373, 386-387; 702 NW2d 166 (2005), amended in part 474 Mich 1201 (2005). Further, in order to plead a valid workplace discrimination claim under Section 2 of the ELCRA, a complainant must plead that he or she was "(1) a member of a protected class, (2) subject to an adverse

employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Smith v Goodwill Industries of West Mich, Inc*, 243 Mich 438, 448; 622 NW2d 337 (2000) (citation omitted). Sex is a protected characteristic, see 37.2202(1), *Dep't of Civil Rights v Waterford Twp Parks & Rec*, 425 Mich 173, 184; 387 NW2d 821 (1986), as is sexual orientation, see *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 421-423, 433; 987 NW2d 501 (2022) (reversing the Court of Claims and holding that "[d]iscrimination on the basis of sexual orientation necessarily involves discrimination because of sex").

In this case, Miller pleaded that (1) he was a member of a protected class based on his sex and sexual orientation; (2) he had served as a "councilman" for a period of five years; (3) he was subject to adverse employment actions with respect to "employment, promotional opportunities, compensation, or other conditions or privileges of employment" on the basis of a protected characteristic; and (4) he was treated differently than both non-male and male employees who were similarly situated.[3]

Miller's pleadings, taken as true, establish a valid claim for employment discrimination under Article 2 of the ELCRA. Although the City argued, and the trial court found, that Miller was not an "employee" of the City and that no "employment relationship" existed, the plain language of the statute does not limit employment discrimination claims to employees. As our Supreme Court observed in *McClements*, "MCL 37.2202 does not state that an employer is only forbidden from engaging in such acts against its own employees. . . . Accordingly, to limit the availability of relief under the [EL]CRA to those suits brought by an employee against his or her employer is not consistent with the statute." *McClements*, 473 Mich at 386.[4] The Court in *McClements* therefore held that "a worker is entitled to bring an action against a nonemployer defendant if the worker can establish that the defendant affected or controlled a term, condition, or privilege of the worker's employment." *Id*. at 389.

Applying *McClements* to this case, we conclude that irrespective of whether Miller, as an elected official, was an "employee" of the City, he certainly had employment and alleged that the City affected or controlled a condition of his employment. Therefore, we conclude that Miller pleaded a viable claim under section 2 of the ELCRA.

The City points out that the ELCRA is based on Title VII of the 1964 Civil Rights Act, 42 USC 2000e *et seq*., and that our Supreme Court has encouraged using federal precedent interpreting Title VII as guidance in interpreting the ELCRA. *Rouch World*, 510 Mich at 411. Further, the City notes that Title VII explicitly exempts from its definition of "employee" "any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an

---

[3] Miller did not specifically plead that he was treated differently than similarly-situated employees of a different sexual orientation. We note that Miller filed his complaint approximately three months before our Supreme Court issued its opinion in *Rouch World*.

[4] In *McClements*, the plaintiff was an employee of AVI Food Systems, which the defendant, Ford Motor Company, had hired to operate three cafeterias at a Ford assembly plant.

appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 42 USC § 2000e(f).

The City is correct that the definition of "employee" found in 42 USC § 2000e(f) excludes elected officials and certain other individuals. This exclusion has been held to preclude such persons from bringing certain employment discrimination claims under Title VII. See, e.g., *Crumpacker v Kansas Dep't of Human Resources*, 474 F3d 747 (CA 10, 2007) (noting that "Title VII outlines four classes of persons who are exempt from its protection: (1) elected officials; (2) persons chosen by an elected official to be on such official's personal staff; (3) "appointee[s] on the policy making level"; and (4) persons serving as an immediate adviser to the elected official with respect to the constitutional exercise of the powers of the official's office."). However, we note not only that we are bound by our Supreme Court's holding in *McClements*, but that Title VII, using language similar to the ELCRA, prohibits an employer from taking certain actions against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," see 42 USC § 2000e-2(a)(1), and other actions against "employees" or "applicants" based on those same characteristics, see 42 USC § 2000e-2(a)(2). Therefore, it does not appear that the definition of "employee" found in Title VII would necessarily bar all employment discrimination claims from elected officials. Indeed, the exclusion cited by the City contains its own carve-out for "employees subject to the civil service laws of a State government, governmental agency or political subdivision." Moreover, when analyzing Title VII discrimination claims, certain government employees may be able to pursue such claims under the Government Employee Rights Act, 42 USC 20003-16a *et seq.*, or other similar statutes, notwithstanding their exclusion from the definition of "employee." See 42 USC § 2000e-16c. In short, the definition of "employee" under Title VII is part of a complex network of federal legislation, and should be considered in that context, rather than merely reading the text of 42 USC § 2000e(f) (defining "employee") in isolation. See *Manuel v Gill*, 481 Mich 637, 650; 753 NW2d 48 (2008) (stating that "[a] court does not construe the meaning of statutory terms in a vacuum . . . [r]ather, we interpret the words in their context and with a view to their place in the overall statutory scheme") (quotation marks and citations omitted).

More importantly for our purposes, when Title VII exempts elected officials and other persons from the definition of "employee," it does so explicitly, not by implication. Although we have been encouraged to take "guidance" from federal interpretations of Title VII, *Rouch World*, 510 Mich at 411, we do not believe that we are required to read extensive language from Title VII into the ELCRA, language that the Legislature did not see fit to include. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011). Courts may not speculate as to the intent of the Legislature beyond the language expressed in the statute. *In re MCI Telecommunications Complaint*, 460 Mich 396, 414-415; 596 NW2d 164 (1999). Accordingly, nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself. See *Mich Ed Ass'n, 489 Mich* at 218; see also *People v Breidenbach,* 489 Mich 1, 10; 798 NW2d 738 (2011). This primary goal must prevail over any conflicting rule of statutory construction. See *Metro Council No 23, American Fed of State, County and Muni Employees, AFL-CIO v Oakland Co,* 409 Mich 299, 318-319; 294 NW2d 578 (1980).

Additionally, as stated, the Legislature chose to use the words "person," "individual," "employee," and "applicant" in describing different types of conduct prohibited to employers. The Legislature's use of different terms generally suggests different meanings. *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n* (*On Rehearing*), 484 Mich 1, 14; 795 NW2d 101 (2009). Therefore, even if it were established as a matter of law that Miller was not an "employee" of the City by virtue of his status as an elected official, this would not mean, even apart from *McClements*, that it would be fatal to his employment discrimination claim.

The City further argues that Miller did not plead facts that show he suffered an "adverse employment action." We disagree and conclude that Miller's allegations of a constructive discharge resulting from discriminatory harassment are sufficient to withstand the City's motion for summary disposition under MCR 2.116(C)(8). The City's arguments relate to the claim's factual sufficiency, not its legal sufficiency. See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). As our Supreme Court stated in *El-Khalil*:

> While the lack of an allegation can be fatal under MCR 2.116(C)(8), the lack of evidence in support of the allegation cannot. Plaintiff alleged that the adverse employment action resulted from his protected activity. That is enough to withstand challenge under MCR 2.116(C)(8). The relative strength of the evidence offered by plaintiff and defendants will matter if the court is asked to decide whether the record contains a genuine issue of material fact. But that is only a question under MCR 2.116(C)(10). [*Id.* at 162.]

## IV. RETALIATION CLAIM

The antiretaliation provision of the ELCRA, MCL 37.2701, provides in relevant part that "[t]wo or more persons shall not conspire to, or a person shall not . . . [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." A "person" is defined under the ELCRA as "an individual, agent, association, corporation, joint apprenticeship committee, joint stock company, labor organization, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, unincorporated organization, the state or a political subdivision of the state or an agency of the state, or any other legal or commercial entity." MCL 37.2103(g).

"There is no language [in MCL 37.2701] that could conceivably be interpreted as limiting an action for retaliation under the [EL]CRA against only an employer." *Rymal v Baergen*, 262 Mich App 274, 298; 686 NW2d 241 (2004). Rather, a retaliation claim can be maintained against a person or persons even if they are not the complainant's employer. *Id.* at 298. Therefore, the trial court again erred by dismissing Miller's retaliation claim on the ground that it was barred by his status as an elected official rather than an employee of the City.

The City argues that this Court could affirm the trial court on the basis that Miller failed to plead the elements of a retaliation claim. We decline to do so. The trial court did not base its decision on this ground; further, Miller did allege in his counterclaim that he had engaged in protected conduct under the ELCRA by reporting instances of alleged harassment and

discrimination, that he was subject to harassment by the City and its agents or employees as a result of this conduct, that this conduct resulted in, among other things, "making or permitting [Miller's] work environment to remain unbearable," and that he suffered damages as a result. Further, Miller provided examples of discriminatory and/or retaliatory conduct in the common factual allegations section of his counterclaim. We conclude that a cause of action for retaliation was sufficiently pleaded. See *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997). Factual issues, such as whether the City's alleged conduct constituted an "adverse employment action" or was causally linked to Miller's purportedly protected conduct, see *id*., are better resolved in the context of a motion under MCR 2.116(C)(10). See *Rymal*, 262 Mich App at 301 and n 6 (holding that "a single reference to the retaliation constituting sexual discrimination" was sufficient to place the defendants on notice that a retaliation claim was being brought under ELCRA and noting further Michigan's "general fact-based pleading" requirements"), see also MCR 211(B)(1); see also *El-Khalil*, 504 Mich at 162.

Accordingly, the trial court erred by granting the City's motion for summary disposition with respect to Miller's retaliation claim under the ELCRA. *Maiden*, 461 Mich at 119-120.

## V. HOSTILE WORK ENVIRONMENT

As stated, we conclude that the trial court erred by granting the City's motion for summary disposition with respect to Miller's employment discrimination and retaliation claims. We further note that although Miller alleged a "hostile work environment" claim separate from his employment discrimination and retaliation claims, the ELCRA is clear that proof of a hostile work environment is a method of proving sexual harassment, a form of sex discrimination. See MCL 37.2103(k)(*iii*). In this case, the essence of Miller's allegations of a hostile work environment appear in both Count I (employment discrimination) and Count III (retaliation) of his counterclaim. Therefore, and regardless of whether they are independently actionable, the gravamen of Miller's hostile work environment allegations (Count II) was that Miller experienced sexual harassment as discriminatory and retaliatory conduct from the City. See *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) ("It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim."). Accordingly, Miller's allegations of a hostile work environment, at least insofar as they relate to those claims, were also dismissed in error.[5]

---

[5] We note that the ELCRA's definition of sexual harassment includes conduct or communication that "has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, *or* creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment." MCL 37.2103(k)(*iii*) (emphasis added). This language, and the definition's placement in Article 1 of the ELCRA (General Provisions) rather than Article 2 (Employers, Employment Agencies, and Labor Organizations) suggests that proof of a hostile work environment may be relevant to several different claims under the ELCRA, not merely employment discrimination claims.

# VI. AMENDMENT

Miller also argues that the trial court erred by denying him the opportunity to amend his counterclaim to add a count alleging the discriminatory denial of public services under the ELCRA, a request he raised for the first time in his motion for reconsideration. We agree.

When a trial court grants a motion for summary disposition under MCR 2.116(C)(8), (9), or (10), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.118(A)(2) provides that leave to amend "shall be given freely when justice so requires." Motions to amend pleadings may be made at any time, even after judgment. MCR 2.118(C)(1); see also *VHS of Mich, Inc v State Farm Mut Auto Ins Co*, 337 Mich App 360, 374; 976 NW2d 109 (2021).

> Ordinarily, a motion to amend a complaint should be granted, and should be denied only for the following particularized reasons: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment. [*Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).]

A plaintiff or counterplaintiff is not generally required to cite the specific statutory provision under which he is proceeding in order to state a claim. *Rymal*, 262 Mich App at 301 n 6. Rather, pleadings need only contain factual allegations sufficient to reasonably inform the adverse party "of the nature of the claims the adverse party is called on to defend[.]" *Id.*, see also MCR 2.111(B)(1).

In order to state a claim for the discriminatory denial of public services, a complainant must establish: (1) discrimination based on a protected characteristic (2) by a person, (3) resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations (4) of a place of public accommodation or public service. See MCL 37.2302(a), see also *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). The denial of privileges can include rights enjoyed by a particular group of persons, rather than merely rights enjoyed by the public at large. *Id.* at 36.

As discussed, Miller pleaded that he was discriminated against by the City, a "person" under the ELCRA, based on protected characteristics. Further, the ELCRA defines a "public service" as "a public facility, department, agency, board, or commission, owned, operated, or managed by or on behalf of the state, a political subdivision, or an agency thereof or a tax exempt private agency established to provide service to the public, except that public service does not include a state or county correctional facility with respect to actions and decisions regarding an individual serving a sentence of imprisonment." MCL 37.2301(b). Miller pleaded that the alleged discrimination and harassment took place in the environment in which he performed his duties as a city council member, including the environment where the council met to conduct official business. Although Miller's counterclaim does not explicitly state that this environment was a place of public service, the City was reasonably placed on notice that the alleged conduct at issue

took place in public facilities owned by the City. Miller therefore sufficiently pleaded the first, second, and fourth elements of a discriminatory denial of public services claim.

Regarding the third element, Miller alleged that the City and its agents interfered with Miller's ability to perform his duties as a city council member, serve on committees, and raise issues on the city council agenda, as well as created a hostile work environment with a "continuous ongoing demeanor of hostility and exclusion towards [Miller.]" Miller also cited the portion of the ELCRA's definition of sexual harassment that defined such harassment as conduct or communication which "has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, *or* creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational, or housing environment." MCL 37.2103(k)(*iii*). We conclude that this element was also sufficiently pleaded to give the City reasonable notice of a claim against which it may have to defend. *Rymal*, 262 Mich App at 301 and n 6.

Under these circumstances, we cannot say that Miller's requested amendment would be unduly prejudicial to the City or that it would be futile. *Lane*, 231 Mich App at 697. Further, there was no evidence of undue delay or bad faith by Miller; although Miller could have raised the issue of amendment earlier in the proceedings, he did promptly seek to amend his counterclaim after the trial court ruled against him on the City's motion. Although there was, perhaps, some delay, mere delay does not warrant denial of a motion to amend, absent bad faith or actual prejudice. *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997). We conclude that the trial court abused its discretion by denying Miller's request to amend his complaint. *Diem*, 307 Mich App at 215-216.[6]

## VII. CONCLUSION

We reverse the trial court's order granting the City's motion for summary disposition of Miller's counterclaim. We also reverse the trial court's denial of Miller's motion to amend his

---

[6] To survive a motion for summary disposition under MCR 2.116(C)(10), Miller would have to establish at least a genuine issue of material fact regarding whether the prohibited conduct related to the "enjoyment of the goods, services, facilities, privileges, advantages, or accommodations or a place of public accommodation and public service." MCL 37.2302(a). In *Haynes,* our Supreme Court defined "privilege" as a "right, immunity, or benefit enjoyed by a particular person or a restricted group of persons" and held that a doctor's "staff privileges" to use the services of a hospital to treat patients qualified as such a privilege. Therefore, the *Haynes* Court held that the plaintiff had successfully *pleaded* a claim under MCL 37.2302 by alleging that he was denied staff privileges at a public hospital because of a protected characteristic. The issues of whether the City's alleged conduct in this case related to the "enjoyment of the goods, services, facilities, privileges, advantages, or accommodations or a place of public accommodation and public service," MCL 37.2302(a), and how *Haynes* might apply to the circumstances of this case, are not before us on this appeal and in any event are more appropriately addressed by the trial court in the first instance.

counterclaim, and we remand for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Michael F. Gadola
/s/ Stephen L. Borrello