## Farley *v.* Farley.

1. DIVORCE—EXTREME CRUELTY—CONDONATION—EVIDENCE.

In husband's suit for divorce, evidence *held*, sufficient to indicate defendant guilty of acts of extreme cruelty and of indiscretion, and plaintiff's condonation thereof.

2. SAME—CONDONATION—KNOWLEDGE OF WRONGDOING.

Knowledge of an offense against marital relation or enough of plural offenses of a similar or equally culpable character sufficient to illustrate voluntary character of act of forgiveness is essential to render a condonation thereof effective.

3. SAME—CONDONATION—EVIDENCE.

In husband's suit for divorce, record *held*, to show plaintiff's specific knowledge of most of his wife's wrongdoings and sufficient information of others to render effective a subsequent condonation, which took place while parties were on a short trip, by way of reconciliation and restoration of marital rights.

4. SAME—CONDONATION—FRAUD—PRESUMPTIONS—EVIDENCE.

Fraud inducing condonation prevents latter from taking effect, but fraud is never presumed but must be proven by a preponderance of the testimony.

5. SAME—CONDONATION—EVIDENCE.

In husband's suit for divorce, testimony of husband and his wife's son-in-law, who had separated from his wife during the trial, *held*, insufficient to establish that defendant had fraudulently induced a condonation.

6. SAME—ADULTERY—FALSE ACCUSATIONS.

False accusations of adultery by a husband against his wife would entitle her to a decree of divorce.

7. SAME—ADULTERY—FALSE ACCUSATIONS—EXTREME CRUELTY.

Accusations of husband that his wife had committed adultery, made in good faith and upon a reasonable belief as to their truth, *held*, an insufficient basis for decreeing divorce to wife for extreme and repeated cruelty.

8. COSTS—DIVORCE—DISMISSAL OF BILL AND CROSS-BILL.

    No costs are allowed either party to divorce suit where both bill and cross-bill were dismissed and record indicates wife had acquired sufficient property from her husband together with a previous allowance of $250 to bear her own costs.

Appeal from Superior Court of Grand Rapids; Taylor (Thaddeus B.), J. Submitted October 21, 1936. (Docket No. 83, Calendar No. 38,922.) Decided December 28, 1936.

Bill by John F. Farley against Faith Irene Farley for an absolute divorce on the grounds of adultery and extreme cruelty. Cross-bill by defendant against plaintiff for an absolute divorce on grounds of extreme and repeated cruelty. From decree rendered, defendant appeals. Reversed, bill and cross-bill dismissed.

*Alexander, McCaslin & Cholette,* for plaintiff.

*Dunham & Sherk,* for defendant.

BUSHNELL, J. The parties, residents of Grand Rapids, were married on December 3, 1932, at Elkhart, Indiana. At that time the plaintiff, John J. Farley, a widower, was 66 years of age and the defendant, Faith Irene Farley, then already twice divorced, was 32.

The couple did not live together, after their immediate return to Grand Rapids, until about a year and a half later when they made their home in one of the plaintiff's several houses. From the outset, their married life did not embrace that love and affection which is so essential to a happy union. Plaintiff's son and daughter looked with disfavor upon the marriage and did not hesitate to express

their disfavor. Plaintiff said that very soon after the parties commenced living together, his wife began to absent herself from the marriage domicile in the evening without any explanation. It is obvious that the tastes of the two were dissimilar and it is not surprising that domestic trouble arose.

On September 12, 1935, plaintiff filed a bill for divorce on the grounds of extreme and repeated cruelty and adultery. The bill details the cruelty as cold indifference, loss of interest and affection, constant course of absence from the marital roof in the evening without explanation, displays of a vile and ungovernable temper accompanied by outbursts of foul, unseemly language, and the throwing of articles at plaintiff. Two specific acts of adultery are charged. The bill prayed for a divorce from the bonds of matrimony and for injunctive relief to prevent defendant from disposing of certain property conveyed to her by the plaintiff.

The record supports enough of plaintiff's allegations of cruelty to indicate an unhappy and unhealthy domestic situation.

The testimony further shows that on several occasions defendant was openly in the company of her former husband, James Reed, and, although the charges that adultery was committed on two of these occasions were not proven, there is sufficient evidence to indicate that defendant was guilty thereby of acts of extreme cruelty. See *Bearinger* v. *Bearinger,* 170 Mich. 661, and *Hendrick* v. *Hendrick,* 247 Mich. 327.

Plaintiff was apprised of defendant's improper conduct and to confirm his resulting suspicions, he, with two other men, followed defendant on one occasion during which they all were watching when she committed her last act of indiscretion by entering

Reed's house together with the latter and remaining there until plaintiff demanded entrance. Although he did not find his wife in Reed's house, the evidence supports plaintiff's contention that she had been there until the time of his entrance, some 20 minutes after she and Reed had entered the house.

Notwithstanding the information that plaintiff had received concerning past indiscretions of defendant, and notwithstanding his own experiences and observations, his subsequent actions indicated a forgiveness of all of defendant's previous wrong-doings.

Two or three days after the last Reed affair and the subsequent filing of the bill of complaint, the parties met by chance at their home. A conversation took place between them about which plaintiff testified:

"As to what she told me, she took the Bible in her hand, she told me she had time to think matters over and she was very sorry it happened; she was going to be a good and dutiful wife to me, and she was going to do everything, she wasn't going out unless it was with me. * * * When I talked with her on Prospect that Saturday afternoon, she did not tell me she had any relations with Mr. Reed, that was all understood."

The next day, after considerable more discussion, the husband and wife, feeling that they "would have a better chance to get along and be happy" if away from their respective families, decided to take a trip together for the purpose of seeking a new home and place of business in another city. They went to Grand Haven, Battle Creek and Kalamazoo, and spent two or three nights in Lansing during which marital relations were resumed. On cross-examina-

tion, plaintiff testified that at the time he was in Lansing he knew as much about his wife's previous wrongdoings as he did when he filed his subsequent supplemental bill for divorce, that he was willing to give her another chance, that by his actions he did forgive her, that they did have sexual relations, and that he did know the contents of a telegram from his wife to her attorney, instructing the latter to cancel the case, because a reconciliation had been effected.

Immediately upon his return from this trip, plaintiff met his daughter, who informed him that she had learned through defendant's son-in-law, Gordon Gay, that Mrs. Farley had conceived the idea of taking the trip with plaintiff in order to effect a condonation and thereby preclude plaintiff from basing a divorce bill on the wife's past actions. The next day, Farley filed a supplemental bill of divorce setting up the same grounds contained in his original bill, together with additions, which stated that defendant had fraudulently induced the reconciliation to prevent plaintiff's bill of divorce being granted, that defendant had transferred certain property in bad faith and for the purpose of placing it beyond her disposal, and that defendant had broken into plaintiff's safe and removed valuable papers.

The case turns upon the question of whether condonation was effected. Speaking of the nature of condonation, this court said in *Creech* v. *Creech,* 126 Mich. 267:

"But this is treating condonation as a matter of strict contract. It is more properly a question of whether the facts warrant the presumption that there was forgiveness, reconciliation, and reunion, and restoration of all marital rights."

See 9 R. C. L. p. 379, § 170, *et seq.*, and 19 C. J. p. 83, § 192, for general discussion of condonation.

Knowledge of the offense or offenses forgiven is essential to condonation, but where the offender is guilty of many offenses of a similar and equally culpable character, a knowledge of such plural offenses or enough of them to illustrate the voluntary character of the act of forgiveness is sufficient.

"The rule requiring full knowledge is not to be understood as meaning absolute knowledge. While there can be no condonation without knowledge that the offense was probably committed, it is sufficient as a basis for a condonation that the non-offending spouse had such knowledge as would satisfy a reasonably prudent person that the offense had been committed, giving full weight to the trust and confidence which husband and wife are entitled to place in each other." 9 R. C. L. p. 382, § 174.

The record shows that plaintiff had specific knowledge of most of his wife's wrongdoings, and sufficient information of others to lead a reasonably prudent man to believe that all was not as it should be. He cannot complain that he was ignorant of his wife's indiscretions.

Previous to and during the sojourn in Lansing there had been complete forgiveness and reconciliation; there was a reunion and mutual restoration of marital rights. It is not shown that defendant was guilty of any acts after the Lansing trip which would give rise to an action for divorce. We are cognizant of certain refinements in the rules by which condonation of repeated acts of cruelty may be determined, but where, as in this case, the knowledge and forgiveness of the injured spouse is complete, and there is a reconciliation and restoration of marital rights, the requirements of the rule are

satisfied, and further consideration is unnecessary. Therefore, unless there was an element present vitiating the condonation, it must stand as a bar to plaintiff's bill.

Appellee argues that there was no condonation because whatever plaintiff did or said at the time the alleged condonation was effected, was induced by the false and fraudulent statements of the defendant.

The rule is recognized in 9 R. C. L. p. 380, § 173, 19 C. J. p. 84, § 193, and 14 A. L. R. 939, that fraud inducing condonation prevents the latter from taking effect; however, this rule must be applied in consideration of the well-settled maxim:

"Fraud is never presumed; it must be proven by a preponderance of the testimony." *Steele* v. *Shaffer,* 241 Mich. 632.

In our case, the only evidence of any fraud inducing the condonation was given by witness Gordon Gay, who married defendant's minor daughter a few months before this case was begun. He claims that owing to the ill-feeling caused by his connection with the case, he left his wife during the progress of the trial. We have considered Gay's testimony and are compelled to disagree with the trial judge that it is sufficient to establish fraudulent inducement of the condonation.

Appellée cites his own version of his wife's promises regarding their future relations, in support of his claim of fraud, but we do not feel that Farley's testimony is sufficient to impute fraudulent intent concerning these particular matters, inasmuch as the parties separated immediately upon returning from their trip and it cannot be ascertained with any degree of certainty that Mrs. Farley did not intend to fulfill these promises.

There remains for disposition defendant's cross-bill for divorce. Mrs. Farley claims that her husband has been guilty of extreme and repeated acts of cruelty in circulating false and slanderous stories and charges of adultery against her, giving the same wide publicity with consequent humiliation and embarrassment. *Steele* v. *Steele*, 237 Mich. 639 (51 A. L. R. 1186), controls this question; we said:

"In *Simon* v. *Simon*, 225 Mich. 645, it was held (syllabus): 'False accusations of adultery by a husband against his wife would entitle her to a decree of divorce.'

"In 9 R. C. L. p. 346, in considering whether such a charge amounts to cruelty, it is said:

" 'To support a charge of cruelty it must appear that the words were uttered without justifiable cause and for the purpose of inflicting pain. When they are uttered merely as a complaint against apparent misconduct or as the result of natural feelings excited by misconduct, they are insufficient to constitute cruelty. There is, however, good authority, especially in the modern cases, for the position that false and malicious charges of adultery made by a husband against his wife may constitute legal cruelty when made with persistency and under aggravating circumstances.'

"There is proof that plaintiff talked to defendant's mother and to some others about defendant's misconduct, and that he was at one time impressed with the truth of stories he had heard, but it appears that on her denial he placed no credence in them until evidence of a seemingly convincing nature was placed before him shortly before the bill was filed. While unwilling, as before stated, in view of her denial under oath and the corroborative evidence she was able to submit, to hold that the charge was established, we must say that her conduct with Dr. Scott was indiscreet. She admitted making a loan to him of $550, and her subsequent meetings with him, in reference to it as she claims, were at times and places likely to cause distrust of her fidelity on the part of her husband. We have no doubt

that the charge in his bill of complaint was made by plaintiff in good faith, and in the firm belief that he would be able to establish it by competent proof. A charge thus made in a bill of complaint is not, in our opinion, sufficient ground on which to base a claim of extreme cruelty in a cross-bill filed thereto.''

It is alleged that plaintiff by his acts inflicted wilful injury to defendant; we believe that plaintiff's charges were made in good faith and upon a reasonable belief as to their truth. They do not constitute grounds for granting a divorce to defendant.

Condonation having been established, it is a bar to plaintiff's present bill for divorce on the grounds alleged. The cross-bill of defendant is without support or foundation. Both bills must be dismissed and the parties returned to their prior status.

Mrs. Farley seems to have acquired sufficient property from her husband together with our previous allowance of $250 to bear her own costs, but since neither party is entitled to a decree of divorce on the pleadings and proofs, we do not pass upon their rather complicated property rights in this action.

The decree below is vacated and one may be entered here dismissing the bill and cross-bill, without costs to either party.

NORTH, C. J., and FEAD, WIEST, BUTZEL, and TOY, JJ., concurred. POTTER and SHARPE, JJ., did not sit.