BYRNE *v.* BYRNE.

1. DIVORCE—HUSBAND'S NOTE—LIABILITY OF WIFE—EVIDENCE.
   Record in suit for divorce *held*, not to establish any legal liability on part of wife on husband's note at bank upon which she had made some payments from a business jointly owned by the parties.

2. SAME—EVIDENCE.
   Evidence *held*, to have justified decree of absolute divorce for wife.

---

* See Court Rule No. 69 (1945).—REPORTER.

3. APPEAL AND ERROR—DIVORCE—DE NOVO REVIEW.

While a trial court has the advantage of seeing and hearing the witnesses who testify at the trial of a suit for divorce, the case must be determined by the Supreme Court *de novo* on the record.

4. DIVORCE—DIVISION OF PROPERTY.

There is no rigid rule of division of property in divorce actions.

5. SAME—JURISDICTION TO DETERMINE LIABILITY TO THIRD PARTIES.

In wife's suit for divorce the trial court may not properly adjudicate the question of liability of the husband to a third party arising out of a joint venture between the husband and such third party, hence requirement in decree of divorce that wife pay bank an amount owed by such joint adventurers is stricken.

6. SAME—DIVISION OF PROPERTY—FARM—INSURANCE POLICY.

Where the parties to suit for divorce had owned some property jointly and equitable division of the property interests requires that husband be given some portion of the property, he is awarded a specified 60-acre farm and an insurance policy on his life upon which wife claims to have paid premiums, upon payment to her of present cash value of policy within 30 days after final decree.

7. SAME—COSTS—MODIFICATION OF DECREE.

No costs are awarded on husband's appeal from decree for wife in suit for divorce where the decree is substantially modified.

Appeal from Kent; Brown (William B.), J. Submitted June 11, 1946. (Docket No. 16, Calendar No. 43,402.) Decided September 11, 1946.

Bill by Ruth Byrne against Francis J. Byrne for separate maintenance on ground of extreme and repeated cruelty, later amended to bill for divorce from bed and board. Cross bill for divorce on ground of extreme and repeated cruelty. Decree of absolute divorce for plaintiff. Defendant appeals. Modified and affirmed.

*Allaben & Wiarda* (*Craig E. Davids,* of counsel), for plaintiff.

*Linsey, Shivel, Phelps & Vander Wal,* for defendant.

CARR, J.   In June, 1945, plaintiff started suit for separate maintenance, charging defendant with non-support and extreme and repeated cruelty.   Subsequently, the bill was amended to ask for a divorce from bed and board.   Defendant filed his answer, denying the charges made against him and also filed a cross bill seeking a divorce from plaintiff on grounds of cruelty.   Plaintiff, by answer, denied the charges against her; and the case was submitted to the trial court on the pleadings and the proofs of the parties.   Following the trial a decree of absolute divorce was granted to plaintiff, and disposition was made of property belonging to plaintiff and defendant.   Defendant has appealed, claiming that the division of property interests, as made by the decree, is inequitable.

The parties were married in 1934.   There are no children.   At the time of the marriage defendant was engaged in operating an elevator, buying and selling grain and beans, and he continued in such business following the marriage.   Plaintiff taught school for three years following the marriage.   In 1938, they purchased a store building and three lots in Grattan Center, Kent county, taking title jointly. The purchase price was $500, and plaintiff claims that she paid this amount out of money she had saved while working.   $300 was borrowed by the parties on a note, signed by both, for the purchase of the stock of goods.   Apparently by mutual consent, plaintiff ran the store after it was acquired, and defendant devoted most of his time to the elevator business.   He insists, however, that he helped about the store to some extent.   The venture proved profitable and at the time of the trial in the circuit court the stock of goods was valued at approxi-

mately $3,000, with a gross business of $12,500 per annum, and a net profit of $3,000 per annum. The record fully justifies the conclusion that the success of the store operation was due to the work and business ability of plaintiff.

In 1941 the parties purchased, as owners by the entireties, a farm of approximately 60 acres in Grattan township, paying therefor $2,500. This farm had a boat livery in connection with it and the consideration was paid from the earnings of the store and the farm. It is conceded, however, that the initial payment of $100 on the purchase price was made by defendant. In 1944, plaintiff bought a house and lot in Grattan Center, for which she paid $550, and two contiguous lots for the further sum of $110. Title was taken in plaintiff's name and the money for the purchase came from the store earnings. The record also discloses that at the time of the trial plaintiff owned certain corporate stock for which she had paid $700; that she had in the bank cash in the sum of $576.16; and the further sum of $2,000 in a safe. These amounts also came from the income received by plaintiff from the store. Plaintiff owned two automobiles, the certificates of title standing in her name, the value of which the record does not show. She had in her possession household furniture which she claimed to have purchased with money earned in conducting the store. There was no testimony on the trial as to the value of this furniture. Defendant at the time of the trial owned a truck valued at $400, apparently used in connection with his elevator business.

Plaintiff also had in her possession at the time of the trial certain bonds of the United States government. The proofs indicate that such bonds were purchased for $375, with earnings from the store and the further sum of $75 from defendant's earn-

ings. It is in evidence, also, that some four or five years prior to the trial an insurance policy on the life of defendant was taken out in the sum of $2,000. Plaintiff testified that she paid all the annual premiums on this policy. It was not offered in evidence and there is no showing in the record as to its present cash value.

It is apparent from the proofs that defendant was not financially successful in the buying and selling of grain and beans. Whether this result was due to defendant's lack of ability or to the hazards of the business is not clear. He continued, however, to operate the elevator, apparently with plaintiff's approval. Her testimony indicates that she assisted him at times, particularly with reference to the borrowing of money. The record fairly justifies the conclusion that at least prior to the final two or three years of their married life the parties regarded their property and business interests as belonging to both.

In 1935, defendant entered into a written agreement with Dr. William A. Dursum, which in terms created a joint venture for the purchase and sale of grain for a period of 60 days, unless sooner terminated. Pursuant to this agreement Dr. Dursum advanced the sum of $2,000 as capital for the venture. It was specifically provided that the profits and losses should be divided equally between the parties. Subsequently, Dr. Dursum advanced the further sum of $3,800, which was borrowed at a bank in Belding, Michigan, on a note signed by Dr. Dursum and his wife. At the time of the trial in the circuit court there was due on this note a balance of approximately $1,620. It is the claim of plaintiff that she made some payments on the Dursum note to the bank out of the store profits. The record, however, does not establish any legal liability on her part in

connection with the obligation. She was not a party to the written agreement made in 1935 between defendant and Dr. Dursum.

The record does not contain the opinion of the trial court. A notation states that the case was decided in the absence of the reporter. The evidence justifies the conclusion, as set forth in the decree, that plaintiff was entitled to an absolute divorce and, as indicated at the outset, defendant has not appealed from this part of the decree. In disposing of the property the trial judge awarded to plaintiff all of the real estate and personalty above referred to, with the exception of the Ford truck which was given to defendant. It was ordered, however, that within 30 days after the decree became final plaintiff should pay to the Belding bank the sum of $1,620 remaining due on the Dursum note. No provision was made in the decree to secure the making of the payment.

The provisions of the decree, as entered by the trial court, presumably rested on the conclusion that the property owned by the parties at the time of the trial had been acquired, principally, through the efforts of plaintiff. As above noted, however, the proofs offered on the trial, together with the fact that the store property and the farm were purchased jointly, indicate that during the greater part of their married life the parties themselves considered that they had interests in common, not only in the property but in the businesses that were being carried on. While the trial court had the advantage of seeing and hearing the witnesses who testified on the trial, the case must be determined here *de novo* on the record. As was stated in *Hallett* v. *Hallett,* 279 Mich. 246: "There is no rigid rule of division of property in divorce actions." Each case of this character must be determined on the basis of all the facts and circumstances disclosed by the record.

Based on our conclusions from the pleadings and the proofs we think the decree, as entered, should be modified in certain particulars.

On behalf of appellant it is insisted that the trial court should not have attempted to adjudicate the question as to the liability of defendant to Dr. Dursum arising out of their joint venture. This claim is meritorious. Whether defendant is indebted to Dr. Dursum and, if so, the amount of such indebtedness, are matters to be determined between them. Testifying as a witness in plaintiff's behalf, Dr. Dursum said "As far as I am concerned there is nothing for Byrne to pay unless he wants to pay." While this statement may be regarded as somewhat ambiguous, nevertheless, it tends to lend support to defendant's claim that the matter is not one that should be adjudicated in this proceeding. The decree will be modified by striking out the provision requiring plaintiff to make payment of $1,620 to the Belding bank.

An equitable division of the property interests of the parties requires that defendant should be given some portion of the real estate jointly owned. Defendant consented in open court that the store property and the store business be awarded to plaintiff. Title to the home and the contiguous lots is in her name, and the situation with respect thereto should not be disturbed. The decree will be modified, however, by giving the 60-acre farm in Grattan township to defendant; and by providing that he may have the insurance policy, conditioned on his paying to plaintiff within 30 days after the final decree, the present cash value of said policy. In the event that he fails to make such payment within the time limit the policy will belong to plaintiff.

A decree will enter in this court in accordance with this opinion, affirming the decree of the circuit court as modified in the particulars stated. There-

upon the case will be remanded to the circuit court for enforcement of the decree. In view of the nature of the case no costs are allowed.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. STARR, J., took no part in the decision of this case.