[File No. 7259]

WILHELM RUFF, Appellant, v. MARIE RUFF, Respondent.

(52 NW2d 107)

776

Opinion filed February 21, 1952.   Rehearing denied March 19, 1952

*J. K. Murray,* for appellant.

*Emil A. Giese,* for respondent.

MORRIS, Ch. J.   This is an action for divorce.   The plaintiff and defendant were married on July 14, 1938.   They have no children.   On June 28, 1950, the plaintiff commenced an action for divorce.   He alleges that for the past eleven years the de-

fendant treated him in a cruel and inhuman manner by falsely accusing him of the commission of the crime of adultery with his sister-in-law and with various other women; that she is constantly in the habit of calling him bad and vile names and charging him with being sexually impotent; that she has also slandered the plaintiff to the neighbors and made false accusations of crimes which have caused the plaintiff great mental pain, humiliation, and embarrassment. He also charges the defendant with having a violent, jealous, and vicious temper and of being physically incapacitated to consummate the marriage relationship.

The defendant served and filed an answer and cross complaint in which she denied the allegations of the plaintiff's complaint and set forth acts of physical violence and mental cruelty. In support of the latter ground she alleges plaintiff's lack of affection for and association with her. She also alleges that he associated with other women on intimate terms and told the defendant that he did not want her any more, and forcefully evicted her from their home. She asks that the plaintiff's complaint be dismissed and that she be granted an absolute divorce and that the court make an equitable distribution of the property of the parties and order the transfer and assignment of a just share thereof to her. The plaintiff by reply denies the allegations of the cross complaint, with the exception of the admission of the ownership of certain property.

The trial court dismissed the plaintiff's complaint and awarded the defendant a divorce on her cross complaint and decreed a division of the property of the parties. The plaintiff appeals. The appeal presents two major questions. The first is: Which, if either, of the parties is entitled to a divorce? And the second is: If a divorce is granted, did the trial court make an equitable and proper division of the property?

The plaintiff's case is weak. He testified that he was subjected to cruel and inhuman treatment by being accused of having illicit sexual relations with three other women, Mrs. W, Mrs. K, and the plaintiff's sister-in-law Mrs. R. He denied these relationships. Mrs. W and Mrs. R appeared as plaintiff's corroborating witnesses. Mrs. W testified that she had no improper rela-

tions with the plaintiff and that the defendant had started false rumors regarding Mrs. W's relations with him. On cross-examination Mrs. W testified that the plaintiff used to come to her house quite often when her husband was gone; that her husband heard about it and told the plaintiff he didn't want him around. After that the plaintiff quit coming to her place. She said that her husband didn't like it because people were talking. She went to a dance with the plaintiff and another couple in October 1949. Later Mrs. W was recalled to the stand and testified that the defendant came to see her about being a witness in this lawsuit and asked Mrs. W to say on the witness stand that the plaintiff was the father of her son, which she refused to do. The defendant categorically denies this conversation.

Mrs. R, the wife of plaintiff's brother, testified that her husband has been ill several years and that he is unable to do his farm work. She denied having improper relations with the plaintiff. She also testified that a rumor was going around that she had improper relations with him and that the defendant had started the rumor. Mrs. R's husband is unable to speak but makes his thoughts known by shaking or nodding his head. He has signified a desire to have the plaintiff stay away from the farm. But despite this admonition, the plaintiff comes back to the farm to help out. Mrs. R's father also asked the plaintiff to stay away. When still another brother, Henry Ruff, came to the farm at the request of the sick husband, Mrs. R slapped him, kicked him, and ordered him off the premises. She gave as reason for this conduct that Henry always wanted to argue with her about the way she was running the business. The plaintiff who was also present ordered his brother Henry to move on. The plaintiff testified that he had ceased to cohabit with the defendant as man and wife about eight months prior to the institution of this suit for divorce. He told the defendant that he will never live with her and on the witness stand he stated:

"I sooner die than live with her."

There is no dispute as to these facts: On June 21, 1950, the plaintiff took the defendant to her mother's home and told her to stay there and that he did not want her any more. The defendant went back to her own home the following day. Upon

arriving there in the evening, the house was locked and her husband was gone. She slept on the floor of the summer kitchen until her husband came home about one o'clock a.m. He let her in the house where she slept the rest of the night. The next day the plaintiff told the defendant she had to get out. She packed her clothes and the plaintiff took her back to her mother's home, where she was still staying at the time of the trial on October 10, 1950.

The defendant testified that the plaintiff struck her twice, once in June 1949 and again in February 1950. In January 1950 her husband started to make frequent trips to his brother's farm to do the chores. During that month he went over three or four days a week and stayed overnight. He left the defendant at home to milk the cows, clean the barns, and do other chores. The parties quarreled frequently over her accusations that her husband was keeping company with other women. It was during these altercations that she suffered physical violence on two occasions. The first time he hit her over the eye; the second time on the hip. She testified that on more than one occasion he compared her with Mrs. R and stated that Mrs. R worked more than the defendant.

Mrs. Ottmar, a witness for the defendant, stated that she was a neighbor of Mrs. K. For a period of about a month and a half the plaintiff visited the K home about every other day while Mr. K was away at work. On these occasions the children of Mrs. K would be put out of the house or sent over to the neighbors'. Mrs. Ottmar told the defendant about seeing the plaintiff frequently enter the K residence. Mrs. Ottmar's testimony is corroborated by that of her son, William, who was then a disabled war veteran. He was discharged from the veterans hospital about July 15, 1949, and stayed at his mother's house until about the middle of September of that year. He said that during that time the plaintiff came to the K house about three times a week while Mr. K was away at work.

The ground on which divorce is sought in both the complaint and the cross complaint is extreme cruelty. Under our statutes extreme cruelty is the infliction of grievous bodily injury or grievous mental suffering. Section 14-0505 NDRC 1943. The

gravamen of the plaintiff's accusation against the defendant is that the defendant falsely accused the plaintiff or having illicit relations with other women. Under our statute extreme cruelty may result from the infliction of grievous suffering, either physical or mental, and proof of physical injury may nor may not be essential, depending upon the charge made and the nature of the evidence in the particular case being tried. Mahnken v. Mahnken, 9 ND 188, 82 NW 870; Rindlaub v. Rindlaub, 19 ND 352, 125 NW 479; Thompson v. Thompson, 32 ND 530, 156 NW 492; Mosher v. Mosher, 16 ND 269, 113 NW 99, 12 LRA NS 820, 125 Am St Rep 654.

Unfounded accusations of infidelity may inflict much grievous mental suffering as to amount to extreme cruelty. Nelson, Divorce and Annulment, Second Edition, Section 6.22; 27 CJS, Divorce, Section 28b; 17 Am Jur, Divorce and Separation, Sections 64 and 65; Kennedy v. Kennedy, 302 Mich 491, 5 NW2d 438, 143 ALR 617 and annotation on page 623. However, if the party making the accusations has reasonable grounds to believe and does believe that they are true, most of the cases hold that the making of the accusations, standing alone, is not sufficient evidence to support the granting of a divorce upon the ground of extreme cruelty. McAllister v. McAllister, 7 ND 324, 75 NW 256; Ritter v. Ritter, 103 Cal App 583, 284 Pac 950; Oertle v. Oertle, 146 Neb 746, 21 NW2d 447; Parman v. Parman, 94 Ore 307, 185 Pac 922; Truax v. Truax, 62 Cal App2d 441, 145 Pac 2d 88; Beach v. Beach, 4 Okl 359, 46 Pac 514; Farley v. Farley, 278 Mich 361, 270 NW 711, 109 ALR 678; Annotation 143 ALR 635; Keezer, Marriage and Divorce, Third Edition, Section 365.

While this record does not contain evidence sufficient to convict the plaintiff of adultery, it is sufficient to establish that the plaintiff's conduct repeatedly and over a considerable period of time warranted a belief on the part of the defendant that the plaintiff was unfaithful to his marriage vows and gave her reasonable cause to accuse him of sexual misconduct with other women. The trial court was correct in determining that plaintiff had wholly failed to establish his cause of action for a divorce.

We now turn to the defendant's cross complaint which is

also based upon the ground of extreme cruelty. This cruelty, it is alleged, consisted of both grievous bodily injury and grievous mental suffering inflicted upon the defendant by the plaintiff. The trial court found that the defendant did not treat the plaintiff in a·cruel and inhuman manner, but that, on the other hand, the material allegations contained in the defendant's cross complaint pertaining to acts of extreme cruelty on the part of the plaintiff are true.

The evidence of physical violence is restricted to two occasions already referred to. Evidence concerning mental cruelty is much more positive and extensive. We have already outlined the proof with respect to plaintiff's conduct with women other than the defendant which, while not sufficient to establish adultery, was ample to cause the defendant apprehension, worry, and humiliation. This conduct is entitled to be considered in connection with evidence of other conduct on the part of the plaintiff tending to support the defendant's allegation of grievous mental suffering. There is no question that the defendant over a considerable period of time suffered ill treatment at the hands of the plaintiff which grew progressively worse. According to his own testimony, he ceased to cohabit with her as husband and wife some eight months prior to the commencement of the action. On June 21, 1950, the plaintiff told his wife that he was taking her to her mother's place in Elgin and that she was to stay there forever. She stayed with her mother overnight and came back to the Ruff home the following evening. The plaintiff was away and the house was locked. When the plaintiff came home about one a.m. he admitted her to the house and she stayed until morning. He again took her to her mother's place. This is his testimony as to what happened:

"Q. And what did you say that night about her not being able to stay there any longer?

"A. Well, I told her that, I told her the first time when I took her down there, 'I don't want her no more.'

"Q. And did you tell her that she had to get out, that she can't stay in that house anymore?

"A. I didn't tell her that until the second time.

"Q. The next day. What happened?

"A. Well, I told her.

"Q. Was she still there?

"A. Yes.

"Q. And what did you say to her?

"A. And I asked her if she didn't want to go back there anymore, and she said, 'Well if it had to be, I go back.' And she packed her clothes."

The defendant testified that as a result of the plaintiff's conduct she couldn't sleep and in the morning she couldn't eat and was always worried and her mind was upset and that the condition continued at the time of the trial. Upon the entire record we reach the same conclusion as did the trial court, that the plaintiff failed to establish grounds upon which he is entitled to divorce, but on the other hand, the defendant has established that the plaintiff treated her with extreme cruelty and that she is entitled to a decree of divorce. The remaining question is what disposition should be made of the property as between these contending parties.

When the parties were married in 1938, their contribution of valuables to this enterprise was about equal. Each contributed six or seven cows. The plaintiff states that he had about $900.00 in cash, which the defendant claims she never saw. The defendant contributed some household goods. Both parties appear to have been diligent, industrious, and frugal. In twelve years they accumulated 640 acres of land with a set of good buildings thereon, 51 head of cattle, 2 horses, 80 chickens, a complete line of farm machinery, grain and feed for the livestock, bills receivable amounting to $1500.00, and cash of an undetermined amount in the hands of the plaintiff. The trial court found the real estate to be worth $19,200.00 and the personal property to be worth $17,500.00. He decreed that the defendant should have the real estate and all her clothing and personal effects, while the plaintiff should have all the other personal property including household furniture and utensils.

When a divorce is granted the court is required to make such equitable distribution of the real and personal property of the

parties as may seem just and proper. Section 14–0524 NDRC 1943. The distribution to be made depends upon the facts and circumstances of each particular case. Agrest v. Agrest, 75 ND 318, 27 NW2d 697. There is no rigid rule for the division of property but the ultimate object to be sought is an equitable distribution. Byrne v. Byrne, 315 Mich 441, 24 NW2d 173; Casciola v. Casciola, 317 Mich 485, 27 NW2d 65; Jensen v. Jensen, 144 Neb 857, 15 NW2d 57; Caldwell v. Caldwell, 58 SD 472, 237 NW 568.

In Holmes v. Holmes, 152 Neb 556, 41 NW2d 919, and Ristow v. Ristow, 152 Neb 615, 41 NW2d 924, the Supreme Court of Nebraska adopted this rule:

"In determining the question of alimony or division of property as between the parties, the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage; their earning ability; the duration of and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, and whether accumulated or acquired before or after the marriage; and from all such elements the court should determine the rights of the parties and all other matters pertaining to the case."

We think this is a proper rule to apply, where, as in this case, the wife has been granted a divorce for the fault of the husband. Under it, it is clear to us that the division of property made by the trial court is not unfair to the plaintiff. He is not required to pay alimony. The marriage relation is completely dissolved. He receives the bills receivable, the livestock, a complete set of farm machinery, and other personal property. The evidence indicates that he is an able farmer. He is in a position to continue his means of livelihood. The defendant is apparently satisfied with the determination of the court and makes no complaint. The judgment appealed from is affirmed.

GRIMSON, CHRISTIANSON, SATHRE and BURKE, JJ., concur.