# 133

BISMARCK TRIBUNE COMPANY, a Corporation, Plaintiff and Appellant,

v.

R. D. BOWMAN, Defendant and Appellee,

and

Betty Bowman, a/k/a Betty P. Bowman, Defendant.

Civ. No. 9746.

Supreme Court of North Dakota.

May 15, 1980.

Richard P. Rausch, of Rausch & Rausch, Bismarck, for plaintiff and appellant.

Harold L. Anderson and Christine Hogan, of Pearce, Anderson & Durick, Bismarck, for defendant and appellee; argued by Hogan.

VANDE WALLE, Justice.

The Bismarck Tribune Company appeals from a judgment of the Burleigh County district court in a quiet-title action entered

on November 6, 1979. We affirm that judgment.

In May of 1978, Jack Meckler, on behalf of the Bismarck Tribune, initiated negotiations with R. D. Bowman to acquire from him certain property within the city of Bismarck. This property was part of a larger tract the Tribune sought to acquire for the purpose of relocating and expanding its business. On May 18, 1978, Mr. Meckler secured an earnest-money agreement from Mr. Bowman. At that time Mr. Meckler was informed that title to the property was in August and Irma Heinrich, who lived in Minnesota. Mr. Bowman held the property under a contract for deed. The contract for deed, which listed as vendees R. D. Bowman and Betty Bowman as joint tenants, was shown to Mr. Meckler at the time the earnest-money agreement was entered into, but Mr. Meckler testified that he did not read the contract. It was agreed that Mr. Bowman would contact Mrs. Heinrich and have her send the abstract. The abstract was delivered to Mr. Rausch, the Tribune's attorney, on July 5, 1978.

After receiving the abstract and a copy of the contract for deed, Mr. Rausch drafted a warranty deed transferring the property from August Heinrich and Irma Heinrich to R. D. Bowman and Betty Bowman as joint tenants. This deed, along with a sum advanced by the Tribune to pay the remaining amount owing on the contract for deed, was sent to the Heinrichs, who signed the deed on July 18, 1978, and returned it to Mr. Rausch's office. Mr. Bowman never saw this deed. Thereafter, Mr. Rausch drafted a warranty deed showing a transfer of property from R. D. Bowman, a divorced person, to the Bismarck Tribune Company.

Prior to the transfer of the property, Mr. Rausch informed Mr. Meckler that Mr. Bowman had been divorced and requested Mr. Meckler to find out if any instruments had been prepared in connection with the divorce. Mr. Meckler contacted Mr. Bowman and Bowman's secretary secured a copy of the divorce decree and property-settlement agreement from the Burleigh County Clerk of Court. These documents were delivered to Mr. Rausch's office sometime during July of 1978.

On July 26, 1978, Mr. Bowman signed the warranty deed transferring the property to the Tribune and was issued a check for the agreed-upon selling price. On July 31, 1978, Mr. Rausch gave Mr. Meckler the two deeds, a copy of the Bowman divorce decree, and a copy of the property-settlement agreement, which Mr. Meckler brought to the Burleigh County Register of Deeds' office to record.

The abstract for the property was continued on August 4, 1978, to show the eventual transfer to the Tribune plus a certified copy of the Bowman divorce decree. Mr. Rausch issued a report on the title on September 12, 1978, in which he stated:

"SPECIAL NOTE: Examiner advises that under date of July 18, 1978, a Warranty Deed was issued by August Heinrich and Irma V. Heinrich, husband and wife, to R. D. Bowman and Betty Bowman, in fulfillment of an unrecorded Contract for Deed.

"On the 26th day of July, 1978, R. D. Bowman, a divorced person, executes and delivers his Warranty Deed to Bismarck Tribune Company as is noted above. Included in the abstract and shown at entry # 114 is a certified copy of the Decree of Divorce as between Betty P. Bowman and R. D. Bowman, which recites that the bonds of matrimony are dissolved and includes the following:

"'Betty agrees to give up all claim to any property owned by Sandy * * *.'

"Examiner has suggested that to perfect the title a Quit Claim Deed be secured from Betty Bowman, also known as Betty P. Bowman, and has now been informed that presently said person is a patient at State Hospital in Jamestown, North Dakota. Examiner has suggested that consideration be given to an amendment to the divorce decree to more particularly describe the properties involved or to secure a Quit Claim Deed either from Mrs. Bowman or her legal representative."

Thereafter, Mr. Rausch notified Mr. Harold L. Anderson, attorney for Mr. Bowman, and Mr. Morris Tschider, attorney for Mrs. Bowman, of the alleged problems in the chain of title and suggested that Mrs. Bowman issue a quitclaim deed. In November of 1978, the Tribune commenced an action to quiet title in itself and for a judgment against Mr. Bowman for all damages it sustained by reason of the alleged defects in Mr. Bowman's title. During the pendency of this litigation, the Tribune paid Mrs. Bowman $12,500 for a quitclaim deed. At trial, the Tribune stated its only damage was the amount paid to Mrs. Bowman to secure her quitclaim deed.

The district court concluded that the property-settlement agreement entered into by the Bowmans conveyed all interest Mrs. Bowman had in the property to Mr. Bowman and that Mrs. Bowman was breaking that agreement by claiming otherwise. The district court ordered the title to the property quieted in the Tribune, and dismissed its claim against R. D. Bowman. From this judgment the Tribune has appealed.

The dispositive issue on this appeal is whether or not the district court erred in interpreting the property-settlement agreement, entered into prior to the Bowmans' divorce, as divesting Mrs. Bowman of all interest in the property here under consideration.

The Bowmans were married in 1971. In July of 1972, real property was purchased from the Heinrichs under a contract for deed, which listed Mr. and Mrs. Bowman as joint tenants. The parties separated in 1974. At that time a separation and property-settlement agreement was entered into. This agreement provided, in part:

"1. Sandy [Mr. Bowman] agrees to pay to Betty [Mrs. Bowman] the sum of Four Hundred Seventy-five Dollars ($475.00) each and every month during the period of the separation, said payments to begin on January 1, 1975 and to continue on the first day of each month thereafter until otherwise terminated as provided herein, or by mutual agreement of the parties.

"2. Betty agrees to give up all claim to any of the property owned by Sandy and it is expressly agreed and understood that each of the parties have already secured and have in their possession all of their personal property and that an effective division of their personal property has been completed.

"3. That either party is free to petition to a Court of competent jurisdiction for a divorce severing the bonds of marriage of the parties hereto at any time and that upon such petition being filed each party agrees and binds themselves to this agreement as and for a property settlement in said divorce proceedings, with the Four Hundred Seventy-five Dollar ($475.00) support payments being continued for an additional period of thirty-six (36) months after the final decree of divorce is entered and to be discontinued thereafter. It is further expressly provided however that said monthly support payments shall be terminated prior to the thirty-six month period upon the remarriage or death of Betty.

"That the above entitled agreement constitutes the full and complete agreement and settlement between the parties and that neither party shall make any claim against the other for any other support, property, or other claims, except as herein provided."

Ultimately, the parties were divorced in 1977, having entered into a further stipulation, referred to in the divorce decree, reconfirming the earlier property-settlement agreement with some additions, including:

"1. . . .

"a) . . .

"b) In addition to the sums to be paid under Paragraph 3 of the separation agreement the defendant acknowledges and shall pay to the plaintiff the sum of Five Thousand Dollars ($5,000.00), payable at the rate of One Hundred Fifty Dollars ($150.00) per month directly to a savings account to be established in the name of Betty P. Bowman in the First Bank of North Dakota, Jamestown, at Jamestown, North Da-

kota, beginning with the first of said payments on February 1, 1978, and to continue thereafter until the full sum of Five Thousand Dollars ($5,000.00) has been paid therein, at no interest. It is further stipulated that the plaintiff cannot withdraw such funds from said savings account until the payments specified in Paragraph 3 of the separation agreement have terminated, either through death, remarriage or expiration of the thirty-six (36) month period. That after the said payments have ceased, the plaintiff may draw on said savings account at a rate of not more than Four Hundred Seventy-five Dollars ($475.00) per month thereafter until the said fund is exhausted, provided, however, that in the event plaintiff becomes deceased the full sum in said account at the time of plaintiff's death shall become immediately payable to her heirs at law or as she may direct by will; after 1–1–81, plaintiff may withdraw the $5,000.00 in a lump sum.

"2. That the plaintiff [Mrs. Bowman] . . . specifically requests the Court to adopt the terms of the separation agreement and property settlement agreement, in addition to the items specified in Paragraph 1 above, as and for a complete settlement between the parties as to any alimony, support or property division that might be due to the plaintiff by reason of the said marriage."

The district court was of the opinion that the property-settlement agreement entered into by the parties conveyed and transferred the interest of Mrs. Bowman in the property. We agree, and believe such transfer was part of an equitable property settlement made by the district court at the time of the divorce. In *Nastrom v. Nastrom*, 284 N.W.2d 576, 580 (N.D.1979), we noted:

"There are no fixed rules by which a trial court is to divide the marital estate in a divorce case. The ultimate objective is to make an equitable distribution, and the determination of what is an equitable division lies within the discretion of the trial court."

To aid the trial courts in making this determination this court has provided the following guidelines:

"[T]he trial court may consider the respective ages of the parties to the marriage; their earning abilities; the duration of [the marriage] and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value and its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material." 284 N.W.2d at 581.

These guidelines were first enumerated in *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966).

The record here reveals that the Bowmans were married for six years, but were separated three out of those six years. They had no children. The property here in question was acquired during the marriage. It was never used as a homestead, but was used exclusively for Mr. Bowman's business. Mrs. Bowman has had some health problems for which she has received treatment. Even if we assume her earning abilities may be limited, under the divorce decree Mrs. Bowman was provided $475 a month alimony for three years or until her death or remarriage. In addition, Mr. Bowman was required to set up a $5,000 savings account for Mrs. Bowman's benefit after the termination of the alimony payments for any reason.

Applying the *Ruff-Fischer* guidelines to these facts, we believe it was the parties' intent to transfer Mrs. Bowman's interest in the property to Mr. Bowman as part of the property settlement.

The Tribune contends that the testimony of the attorneys who represented the parties during the divorce proceedings indicated that this property was not considered at the time of the property-settlement agreement and divorce decree. We find the

testimony of the attorneys to be irrelevant. It is the intention of the parties themselves which govern. Mrs. Bowman did not testify at the trial, but Mr. Bowman did and he testified that it was his understanding that under the property-settlement agreement Mrs. Bowman was to give up all claim to the real property. We construe the wording "Betty agrees to give up all claim to any of the property owned by Sandy" to mean the property used by Mr. Bowman in his business, even if that property was held in joint tenancy.

While this wording may not in itself clearly indicate that Mrs. Bowman was to give up her joint-tenancy interest, we believe this construction becomes clear when this clause is read in conjunction with the provision of the property-settlement agreement which states:

"That the above entitled agreement constitutes the full and complete agreement and settlement between the parties and that neither party shall make any claim against the other for any other support, property, or other claims, except as herein provided."

Contracts are to be interpreted as a whole to give effect to every part if reasonably practicable. Sec. 9–07–06, N.D.C.C.

Further support for finding that Mrs. Bowman released her joint-tenancy interest is found in the stipulation and waiver entered by the parties wherein Mrs. Bowman requested the court to adopt the provisions of the property-settlement agreement as and for a complete settlement of the parties' property interests. Where contracts are part of a single transaction they are to be interpreted together. Sec. 9–07–07, N.D.C.C. To give effect to this provision of the waiver and stipulation agreement, it must be held that under the provisions of the property-settlement agreement Mrs. Bowman gave up her interest in the joint-tenancy property.

By holding that Mrs. Bowman did not retain any interest in the property, we also are determining that Mr. Bowman was not responsible for the money paid by the Tribune to Mrs. Bowman for her quitclaim deed. The decision of the Tribune to pay Mrs. Bowman in advance of a judicial determination of the state of the title was a voluntary and independent act with which the Company must now live.

Mr. Bowman had a marketable title. Thus he did not breach the covenants of his warranty deed when he transferred the property to the Tribune.

Notwithstanding what we have said here, we do not want to leave the impression that it was not perfectly proper for counsel for the Tribune to draw to the attention of the Tribune the problem with the joint-tenancy property. The decision to buy Mrs. Bowman's claim may have been prudent, but under the circumstances the Tribune cannot recover from Mr. Bowman what it determined to be a prudent investment.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and SAND, PAULSON and PEDERSON, JJ., concur.